May it please the Court, good morning, Your Honor. James Chavez on behalf of Mr. Vazquez. I'd like to reserve two minutes for rebuttal. Okay, watch your clock. I'm sorry? Watch your clock. Okay, will do. Your Honor, today we're asking this Court to vacate Mr. Vazquez's sentence and remand to the District Court with instructions that the maximum permissible sentence is two years in custody. And we're asking the Court to do that because of the apprendiare below that resulted from the government's repeated failures and because of the District Court's violation of Rule 32. Could I just ask a question that was puzzling me as I went through the record? And I'm sure there's some simple explanation, but there's a finding in recommendations of the magistrate judge taking, saying that she was taking your client's plea and says defendant has admitted that he was, he, she, was deported and removed from the United States after December 19, 1996. And then I have the order from the District Court saying the findings and recommendations of the magistrate judge are adopted and the Court accepts defendant's plea. And the, your client also consented to having that colloquy before the magistrate judge and waiving objections. Is there some mistake in that? Because that would seem to say that as part of the plea, defendant admitted the date. Based on what the Court has read to me, it seems as if the Court did make that finding. But, I mean, reviewing the record from the plea colloquy, at no point did either defense counsel or the defendant himself make that admission that there was a particular removal date. I don't think so. Is there a, the transcript of the plea colloquy is not in the record, or at least not in the excerpts? It's not in the excerpts? We couldn't find it. Do you have a? Do you believe it's in the government supplemental excerpt? It is in the governmental supplemental excerpts. Okay. And so, so that's the one. I think I have that here. And this says transcript of change of plea before the magistrate judge. And that doesn't mention any date. But then we have this document in the record not objected to. And so I'm very puzzled by that when I saw that. Do you have any explanation for why her findings, which are adopted by the district court, has that statement, that he admitted he was deported after a date? That, what the Court is bringing to my attention, I did not catch that in the record, and obviously the government did not catch that in the record. I do not know how the magistrate judge, it's a gentleman, Jan Adler, how he would have made such a finding based on the fact that Mr. Vasquez didn't admit to a particular removal date. Did anybody attack that finding? Did anyone attack that finding? No. No, there was no attack. Why not? I mean, that seems to be the linchpin of what this case is all about. And so that finding was made, and it wasn't attacked. It wasn't questioned. Here is, I imagine what happened in the magistrate court in the Southern District. It turns out to be true if you look at the whole file. I'm sorry, Your Honor. It turns out to be true if you look at the whole file. What turns out to be true? That he was deported and removed from the United States after December 19, 1996. Well, I mean, that's the issue. The government never proved it. I mean, the government did not admit the warrant of removal at trial. Well, this case seems to be really screwed up because even the plea colloquy is not adequate. I mean, it's probably, you didn't make this argument, but it's probably not a valid plea. Well, I mean, under, I mean, this court's precedent, I'm trying to. . . You have to go through all the elements of Rule 11. That the, when you plead guilty to an indictment, you're necessarily pleading guilty to all of the facts that would necessarily make you guilty, but you're not pleading guilty to any additional facts. You're not admitting. . . So the plea was adequate as to Subsection A, but not adequate to Subsection B, but the court's held that B is a sentencing enhancement. So basically, you're arguing he pled only to Subsection A. 1326A. But the magistrate judge added a finding not supported by the record, which I don't know if you were the counsel at the time, you did not object to. So what do we do with that? Because it certainly doesn't make it adequate for. . . I mean, if you didn't object to it, then isn't that deemed an admission? I don't see how there can be. . . I mean, there's no basis for that finding in the record. Were you the lawyer? I was not the lawyer below. Well, what could explain no objection to that, other than the lawyer thought it was true? If I could. . . I mean, if I would just explain how these cases proceed in the Southern District of California. It's a fast-track docket. I mean, I. . . We know how they proceed. I would plead. . . They proceed very quickly and very sloppily. I would plead three or four clients of my own guilty at the same time. There's three other lawyers doing that at the same time. So Judge Adler, even in this case, was reviewing, was on that day, I'm sure, took multiple changes of pleas. He does that every day. His. . . I would have no doubt his clerk helps him fill out these findings. He signs them. He signs 20 of them a day. Where did he get that language? Where did he get that language? I imagine that my guess is, and I don't know, either his clerk or himself looked at the indictment, looked at that language. It was in the indictment. It was in the indictment, yes. That's obviously where it came from. Yes. And the lawyer who was handling this case saw no reason to take any exception to that. I do not know why or why not, why or why he didn't take exception to that. I don't. . . I mean, I don't see why he. . . I mean, I guess. . . The judge didn't make that finding. It would have been. . . In the plea colloquy, what discussion was there of what sentence this plea subjected this person to? The. . . Did it include. . . Did it include B? The. . . Yes. The court did advise him that the maximum possible sentence is 20 years. And that would be. . . That would be B. That would be B. But as this Court has said, the sentence, a magistrate, when a change of plea, under Rule 11, what the court is supposed to do is advise the defendant as to the potential maximum sentence. The court does not have to advise the defendant as to the actual maximum. Did counsel say, time out, this is only a plea to A? What's this business about B? No. I mean, everybody seemed to buy into the proposition that this was a B case. And that's why there was no objection to it. And I guess my point is, is that even if defense counsel had said that, the magistrate judge's response would have been, you know, Mr. Guzman, that's irrelevant. My duty here is to advise him of the potential maximum sentence. And that is a question that. . . I mean, if counsel was pleading him to just an A, wouldn't counsel stand up and say, time out, this is an A case? We're not pleading to a B case. I mean, I don't. . . You tell me this is all sloppy. Maybe it is, but it sure is. It sure is something. It is, Your Honor. I'm just looking for the citation here for this court's case where the court has held that. . . I mean, the duty at the Rule 11 colloquy is to advise the defendant of the potential. What the defendant is actually advised of is the actual maximum sentence. There's no B potential if it's just an A plea. See what I mean? You know that. Yes. So the issue is. . . I infer from this that the attorney standing there knew that it was a B plea. The court. . . I mean, the government. . . I mean. . . And that's why when it came through, the finding that it's a B case, nobody made any objection. The defendant. . . I mean, the defendant provided a factual basis in this case. The government was asked if they were satisfied with the factual basis. That factual basis did not include a removal case. That was my concern, was the factual basis for the guilty plea. I mean, if Mr. Vasquez had chosen, he could have chosen to appeal his conviction by and argue that there was a Rule 11 error here and that there was an insufficient factual basis, but he has not chosen to do that. He didn't do that. His argument is appeal the sentence in this case. So he waived that argument. So there's no Rule 11 problem. What was he sentenced to? He was sentenced to 46 months in custody, which is two years greater than the statutory maximum absent the apprendee there. Okay. So even if we were to accept your argument, notwithstanding all the flaws, we would send this back, vacate the sentence, send it back to the district court, and then the government would introduce the warrant of removal, and then the court could impose the exact same sentence. Well, what I've argued in my papers, which the government did not respond to in their papers, is that when there is an apprendee error and when this court reverses a sentence that was imposed in violation of the apprendee error, that the proper procedure on remand is that the maximum sentence is what was allowable minus the apprendee error. So in this case, that would be two years in custody. And there's multiple cases. Well, is that why you didn't attack the Rule 11, which would start the thing all over again? It is, Your Honor. So in making that argument. I mean, it's in my client's interest. So you have affirmatively waived any Rule 11 attack. This is in the equivalent of what we see on television called all in. I did not raise any Rule 11 argument. And you don't want to. And it did not seem like it would be in my client's best interest to do that. So you tell us, I don't want to raise Rule 11. I want to tie the hands of what's going on here to an 8. I thought it was in the best interest of my client to challenge his sentence and not the conviction in this case based on this Court's precedent. I appreciate your candor. That explains why there's no Rule 11 attack. Yeah, that explains a lot to me about the case. I mean, it's probably a good strategic decision for your client. Because, I mean, under, I mean, there's multiple cases. Well, those cases, excuse me. This was my concern. The cases that you were citing for that proposition were under a different statute, 841. And we definitely have a well-developed jurisprudence in 841. But in 1326, we have Cepeda-Martinez. And that says we do look at evidence at sentencing in order to determine whether the apprendee error is harmless or not. So I'm not seeing why Cepeda-Martinez doesn't control us here so we can send it back on an open record for introducing additional evidence at sentencing. Why aren't we just bound by Cepeda-Martinez and not by the 841 cases? Well, I think that in some senses, this is somewhat of a novel situation if this Court were to remand for apprendee error because the error was not harmless beyond reasonable doubt. I think that this would be the first time that this Court has done it, as it's obviously done it repeatedly in the 841 context. I don't, I mean, it doesn't, I don't see why there should be a distinction between the 1326 statute and the 841. You don't see it, but have you read Cepeda-Martinez? I have. So I guess the answer would be, in Cepeda-Martinez, they did not remand. And so the question was But they said we look at the whole record at sentencing. It didn't have any of the limitations that we've placed on that analysis in the 841 context. They did look at the record at sentencing, at the original sentencing. That is true. And they applied the standard as whether or not the evidence below was both uncontroverted and overwhelming. And basically, based on the facts in that case, in Cepeda-Martinez, the fact that the defendant had not made any factual objections to the pre-sentence report, based on the fact that the warrant of removal was introduced in that case, the Court found that the error was harmless. Here, there was no warrant introduced. Here, there were factual objections that were made to the, that were made, excuse me, to the pre-sentence report. And those things did not happen in Cepeda-Martinez. And that distinguishes it from Cepeda-Martinez. That's why, I mean, in countless cases, when defendants raise apprendiers, below the court at sentencing, what the government does is they introduce a warrant of removal. They introduce the conviction docs. And the Court says, well, there was apprendier, but it was harmless beyond a reasonable doubt because these things were introduced. And the government didn't do that. And so both Cepeda, and that's what happened in both Cepeda-Martinez and in Salazar-Lopez. And so the issue of what is the proper, what is the proper procedure on remand is not, hasn't been addressed in the 1326 case, I think is the question, is the answer. But I don't see why it would be any different in the 841 context. Well, you're saying if the government fails to introduce the evidence, it doesn't get a second bite at the apple. Yeah, and essentially the government's asked for a third bite at the apple. The government had the chance to insist that Mr. Vasquez admitted removal date at the change of plea hearing. They said, no, we're satisfied with the factual basis here. We get to sentencing. He raises the apprendi issue. The government doesn't introduce the docs. And then third, here the government files a motion saying, hey, here's the docs. How many bites at the apple does the government get? And basically under this court's precedent, the government gets two bites at the apple. By the time they get to here, if there's apprendi here, you reverse, and there's no third bite at the apple here. There's no third bite at the apple at the sentencing or hearing. But you don't have a case either way. You don't have a case either way on whether we remand on an open record or not. Well, in this context. Under a 1326 statute now, but under, I mean, there's five, six drug cases that I've cited in my briefs where the court did exactly what I'm asking it to do here. Thank you. All right. Thank you, counsel. Good morning, Your Honors, and may it please the court. My name is Rebecca Cantor, and I represent the United States in this matter. I think that I'd like to start by responding to, well, by acknowledging that we have an apprendi error, just like there was in Zepeda-Martinez and just like there was in Covey and Sainte-Evelle. So do you have an explanation for why the magistrate's finding and recommendations puts the date information in and then that was accepted by the district court? I think that what the court has already established with opposing counsel is correct, which is to say that the clerks prepare these after the plea colloquies, and then there's an opportunity for an objection by either side. And certainly in this case, even if the defense didn't want to stand up in court and say that the maximum wasn't 20 and try to make an issue of that in front of the magistrate judge, then objecting to the presentence report, which, according to the defendant, went beyond what his client was prepared to admit to, went beyond what he actually thought he was pleading to, that would have been the time to object to it. And so I do think that there's a couple of key points in which, by failing to object, the defendant led everyone, the court, probation, and the government, to believe that this case was a 1326B case, the stat max was 20, and that the court correctly imposed a sentence of 46 months. That was the failure to object, of course, to the findings of the magistrate judge. Had he objected at sentencing? Not to any facts related to his immigration history, and I think that's what's really critical. If the court looks at the objections on page 30 of the record, there's two factual objections. One, the defense objects, and moves to strike, to the factual recitations contained in the offense conduction section, which I think we can all agree means the offense conduct section. Now, he says that, but, of course, he pled guilty to the offense conduct. So he pled guilty to A. Right. But that was not the section dealing with the immigration history. The only other factual objection is the defense does not concede and objects to the criminal history calculation. That's it. Those are the only factual objections. The immigration information section contained in the pre-sentence report was never objected to. Can I ask you why you didn't introduce the warrant of removal at sentencing? Yes, Your Honor, a couple of reasons. Did you have it? Yes, we had the warrant of removal. So you made a strategic decision not to introduce the warrant of removal? No, Your Honor, it wasn't a strategic decision. It was the lack of needing to introduce it, and there was two reasons there was no need to introduce it. The first is that there had been no up to the point of sentencing, there had been no issue about there being a lack of a ---- Right. But the law is the government has to charge and prove this. Yes, Your Honor. Even if we introduced the warrant of deportation, though, we'd still have had appendia error. Okay. Because we'd still be in the situation of Cepeda Martinez, which I know Your Honor considered. There, the warrant of deportation was introduced at sentencing, but that fact still wouldn't have been found beyond reasonable doubt by a jury nor admitted by the defendant. So we're not in any different position here. We'd still be having conversations. So did you say you concede appendia error? Yes, Your Honor. Describe for us exactly what you mean by appendia error. Yes. What was the defect? The defect is that the defendant did not admit on the record before the magistrate judge the specific date of removal, nor did a jury find that beyond reasonable doubt. Now, I do think it raises a question where you have him failing to object to the magistrate judge's findings. But in our papers, we've conceded that really there's no evidence, notwithstanding those findings, that the defendant admitted to that specific date. However, the question then becomes harmlessness. Would the outcome have been the same absent the error? That is the test that was applied. And in all of the cases in which this Court has applied it, I agree with my opposing counsel that there's never been a remand because in all those cases the Court has found harmlessness. Because the warrant of removal was introduced at sentencing. Actually, that's not entirely correct, Your Honor. In Rios-Reyes and Aguirre-Calles, both unpublished cases. Absolutely, both unpublished cases. Right. But I'm talking about Zepeda-Martinez. The warrant of removal was introduced at sentencing, and that's why I think it might have been on that panel. I don't remember. But I think that's why the Court determined that it was harmless. Certainly. And you had it in your possession. I do not understand why you created this appeal, you know. Your Honor, when there are actual objections and when something is in dispute, then it certainly makes sense for the government to put into the sentencing record whatever materials could respond to that. That wasn't the case here. Well, didn't you recognize you had a pending error at the time? No, Your Honor. Keep in mind that the objections that were filed to the presentence report were only filed five days before the sentencing. They were not filed timely, which is why this record is missing what probation would be required under Rule 32G to file within seven days, which is a response to those objections, putting forth the information that it's based on. Do you have any objection to sending it back, to doing it right, if you can see there was error? No, I have no objection to sending it back. I don't think it's necessary because I really do think this case is exactly like Rios, Reyes, and Aguirre-Taylors, where this Court, admittedly none of Your Honor, but six other judges of this Court said the presentence report wasn't controverted in the facts that are relevant. There's no controverted the immigration days weren't controverted. The Court can rely on a presentence report. We can go back, but it's really not necessary. You know, what troubles me about this is I think it should go back because I think that just because there's a lot of 1326 cases, that doesn't excuse the failure to do it right, and that perhaps how quickly they're all processed down there. We need to tell the judges and the U.S. attorneys, do it right, or the sentence will be vacated and it will be reversed, and also how to do it right. I mean, because obviously you're relying on all these deemed admissions instead of, you had the document, just stick it in. Well, I think Your Honor reads this as a very valid point, but I really think it goes to show every question you've asked here today of both of us, I think really goes to show that this was handled consistent with how other 1326 cases were. It's a straight up plea. There wasn't a trial. The filings by defense counsel were late immediately before sentencing, all of which is, you know, fine, except that it's, and it was accepted by the district court judge who sort of said, with respect to the objections, you're preserving the record. I see that. Didn't rule on anything. The defense counsel said, thank you, Your Honor, and the sentencing proceeded. No one treated this like there was an actual dispute as to anything. But what's happening is that you're allowing appending error appeals where you don't have to. Yes, Your Honor, except that the, because this court's case law consistently says that an uncontroverted pre-sentence report is something that everyone can rely on, the outcome really wouldn't be any different if you send it back, even though I think certainly you could send it back in kind of the same place. You know, our good friend Harry Pragerson always warns us that when we find things harmless, all that does is encourage the same kind of behavior. And in order to send a message to tighten things up, we have to not find it harmless and send it back and say, do it right. That's the way then people get used to putting things into records so there aren't these issues. That's part of the concern about continuing to say, oh, harmless, harmless, harmless. The message doesn't get through the rhino's skin. I agree. And just to be clear, though, what that would look like on remand would not, Your Honor, be simply introducing the warrant for removal. Because as I say, you'd still have a pendee error. You'd have the pay to Martinez is what you'd have. So if this gets remanded, what we'd be looking at, and this is fine. This is what can happen. But what is a trial in front of a jury on just the fact of removal? Well, not necessarily. Or an admission. You'd have to get an admission by the jury. Not necessarily. You could reach agreement on the appropriate sentence and recommend it to the district court judge in order to avoid another appeal, another trial. Lots of options. Lots of options. That is another option. But certainly to satisfy a pendee, of course, it's required that the finding that enhances the sentence above the two-year statutory maximum, the case law requires either finding by a jury beyond reasonable doubt or an admission by the defendant. And I think that in this case, what you have is a little happening at the appellate level is a little bit of a gamesmanship of I'm not going to actually object to the Well, I think there's gamesmanship on both sides here. Because you did have the warrant of removal and you didn't introduce it. Which there would be no reason to introduce. You know what? We also didn't introduce the conviction documents. There's a lot of things we didn't introduce. But if they're not an issue, then there wouldn't be a reason to introduce documents to respond to something that's uncontroverted is essentially what we have here. Can I ask you a slightly different question? Of course, Your Honor. Are you aware of any case in the 1326 context that either approves of or disapproves of remanding on an open record? I'm not, Your Honor. In reviewing the cases that I reviewed on this to look for that answer are Zepeda-Martinez, Salazar-Lopez, Covian, Rios-Reyes, which is unpublished, and Aguirre-Cayas. And in none of them did they get to the point of remanding because all the courts found harmlessness because they found that absent the error, the outcome would have been the same. And I think an important distinction in this case that I haven't pointed out yet that makes it that the court can be satisfied that absent the error it would have been the same and it's different from Zepeda-Martinez is the only deportations are all subsequent to the conviction. In Zepeda-Martinez it's important to have that warrant of removal to give the court the confidence that the removal was actually the one subsequent to the felony. So maybe in that case you don't want to rely just on a pre-sentence report because there's a pretty important distinction between finding a removal before the felony and finding a removal after the felony, both of which were contained in the pre-sentence report. Here we don't have that concern. Every removal that's listed in the pre-sentence report, every removal that exists is after the felony. And we know that because the defendant was a legal permanent resident until he was convicted for possessing marijuana for sale and was stripped of that. So all deportations follow from that conviction. And it's different from Covian, it's different from Salazar-Lopez, and it's different from Zepeda-Martinez in which you needed that additional evidence for it to be overwhelming and uncontroverted that the removal was subsequent to. Here, the pre-sentence report is enough because everything in there meets the necessary dates that are required to enhance the sentence under 1326B. All right. Thank you, counsel. Thank you, Your Honor.
judges: Trott, Wardlaw, Ikuta